# IN THE COURT OF APPEALS OF IOWA

No. 22-0944
Filed March 29, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JULIEN MARTELL SKIPPER,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Scott County, Jeffrey D. Bert, Judge.


    A defendant seeks resentencing, alleging a breach of the plea agreement and an abuse of discretion in running the new sentences consecutive to his parole revocation. **AFFIRMED.**


    Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

    Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.


    Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

In a bargain with the State, Julien Skipper pleaded guilty to domestic abuse assault resulting in bodily injury and a sex offender registry violation. For its part, the State agreed that it would not resist his request for concurrent sentences. When sentencing rolled around, the State did not oppose concurrent terms for those two pleas but urged the district court to run those terms consecutive to Skipper's probation revocation. Skipper now contends the State breached the plea agreement. He also maintains that the court abused its discretion in adopting the State's recommendation.

Because the plea agreement did not encompass the probation revocation, the State's recommendation involving that separate sentence was not a breach. And seeing no abuse of discretion at the sentencing hearing, we affirm.

## I. Facts and Prior Proceedings

This sentencing appeal involves three criminal cases. But the plea bargain embraced only two of them. The first negotiated case (FECR419243) stemmed from Skipper's domestic violence against his girlfriend. The State charged him with domestic abuse assault by strangulation, a class "D" felony, in violation of Iowa Code section 708.2A(5) (2021). The State reduced that charge to domestic abuse assault causing bodily injury, in violation of section 708.2A(2)(b), a serious misdemeanor, in return for Skipper's guilty plea.

The second negotiated case (FECR419630) dealt with his sex offender registry violations. The State charged Skipper with two counts of failing to notify the sheriff of changes to relevant information about his principal place of residence, each as a second or subsequent offense, class "D" felonies, in violation of Iowa

Code sections 692A.101(23)(a)(21) and 692A.111(1). The State also announced its intent to seek sentencing enhancements based on Skipper's status as a habitual offender. Under the agreement, Skipper pleaded guilty to one violation, and the State dismissed the other count.

The memorandum of plea agreement also included this provision:

3. **All sentencing concessions part of the Agreement:**
   a) This is an open plea. The Defendant and the State are each free to make their own recommendation. The State will not resist concurrent sentences and will not pursue the habitual offender enhancement.

What wasn't in the plea agreement was any mention of the parole revocation. When he committed the current offenses, Skipper was subject to a special sentence of lifetime parole for 2007 convictions for lascivious acts with a child (FECR300399). *See* Iowa Code § 903B.1. The court revoked his parole and imposed five years incarceration. So he was back in prison at the time of this sentencing.

Before sentencing, Skipper sent the district court a letter asking the judge to "run [his] class D felony with [his] lifetime special sentence." He expressed remorse "for being incarcerated" and asserted that he had been "report free" and hadn't had "a conviction in eight years." He also noted his completion of domestic violence education, a cognitive awareness program, and a parenting course. The court treated that communication as part of Skipper's sentencing allocution.

At the sentencing hearing, the State recommended that the court impose concurrent sentences for the domestic abuse assault and the sex offender registry violation, as stated in the plea agreement. But it recommended those terms run consecutive to the parole-revocation sentence that Skipper was serving. In

support of its latter recommendation, the State pointed to Skipper's criminal history, "which is not short and also includes some very serious offenses." The State also noted that Skipper "has violated his probation and has at least one conviction for being a fugitive from justice." The State clarified that the current conviction was Skipper's third sex offender registration violation and he was on "special parole when these offenses occurred." The prosecutor concluded: "He's already incarcerated as it stands from his parole revocation, and I think running this concurrent to his parole revocation would simply not serve the protection of the community and the rehabilitation needs of Mr. Skipper." The presentence investigation report also recommended incarceration run consecutive to the parole revocation.

Defense counsel reiterated Skipper's written request that the new sentences be imposed concurrent to the parole revocation. Skipper—who agreed to appear by video conferencing—then told the court: "I've been trying to build myself up, Your Honor, since 2014. I was able to get my own place, and I was able to have a job." Skipper said he was "not denying" that he had been in a "toxic relationship" and he was "very remorseful" for being back in court. Skipper also reminded the court that he was "on a lifetime parole."

The court followed the parties' recommendation that the sentences for the two new offenses be served concurrently but was "persuaded by the State's argument" to run them consecutive to the parole revocation. As the court announced its sentence, Skipper interjected: "I've got rights. I'm on parole." When warned not to interrupt, Skipper persisted: "This ain't right. This ain't fair. Listen, sir, I did—I took this deal because, sir, I can't have this running consecutive.

Whatever, man, this is crazy." Before the court had him muted, Skipper added: "I did not take this deal. No."

Skipper appeals.[1]

## II. Scope and Standard of Review

We review sentences for correction of legal error. *Patten*, 981 N.W.2d at 130. We will reverse if the record reveals an abuse of discretion or a defect in the sentencing procedure. *Id.* The State's breach of a plea agreement counts as a defect. *Id.* On the choice of sentence, we will reverse only if the district court exercised its discretion on grounds or for reasons that were clearly untenable or unreasonable. *State v. Damme*, 944 N.W.2d 98, 106 (Iowa 2020).

## III. Analysis

## A. Breach of Plea Bargain

A plea bargain is like a contract. *State v. Beres*, 943 N.W.2d 575, 582 (Iowa 2020). Both sides receive a benefit. *Id.* But because the accused waives fundamental rights by pleading guilty, the prosecution must "scrupulously honor the letter and spirit of plea agreements to maintain the integrity of the plea-bargaining process." *State v. Lopez*, 872 N.W.2d 159, 161 (Iowa 2015). Even technical compliance with the terms is not enough if the prosecutor otherwise "undercuts" the bargain. *Beres*, 943 N.W.2d at 582.

Skipper contends that the prosecutor's advocacy for the new concurrent sentences to run consecutive to the parole revocation undercut their agreement.

---

[1] Because Skipper challenges his sentence rather than the guilty pleas, he has good cause to appeal under Iowa Code section 814.6(1)(a)(3). *State v. Patten*, 981 N.W.2d 126, 129–30 (Iowa 2022).

Although the memorandum expressly limited the agreement to the "filed and pending charges" in FECR419243 and FECR419630, Skipper contends the reference to "concurrent sentences" did "not exclude the revocation." He also asserts that he was "completely taken aback when the court imposed consecutive sentences." He relies on that reaction as proof that the prosecutor acted contrary to his "justified expectations." *See Patten*, 981 N.W.2d at 131.

At first blush, Skipper's contention has some appeal. Indeed, the prosecution gave a more full-throated endorsement of its desire for the new sentences to run consecutive to the parole revocation than it did for the agreement to concurrent sentences in the plea agreement.

Trouble is, nothing in the plea agreement prevented the prosecution from pushing that position. The State only agreed not to "resist" concurrent sentences. And the parole revocation was outside the scope of the negotiations. When read in the context of the entire agreement, the phrase "concurrent sentences" included only the domestic abuse assault and the sex offender registry violation. We interpret a contract as a whole. *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991). That same principle holds for a plea agreement. The agreement only prevented the prosecution from resisting concurrent terms for the two new offenses. The prosecution honored that agreement.

On the issue of justified expectations, the record does not support the notion that Skipper reasonably believed that the prosecutor was bound to recommend the new sentences run concurrent to the parole revocation. In his letter to the court, Skipper asked the judge to "give [him] a chance" to serve the class "D" felony

sentence concurrent to the lifetime special sentence. And at sentencing, his counsel echoed that request. Neither Skipper nor his attorney claimed that the more lenient approach was part of the plea agreement.

But did the prosecution's act of "piling on of bad things Skipper had done" undermine its promise not to resist concurrent sentences for the two new offenses, as Skipper contends? Did it deprive Skipper of the benefit of his bargain? The answer is no. The court imposed concurrent terms for the two offenses addressed in the plea agreement. The State was free to make any other recommendation. Skipper received the benefit of his bargain. We decline to order resentencing on this ground.

## B. Sentencing Discretion

After announcing the new concurrent sentences would be consecutive to the parole revocation, the court stated: "The reasons for the sentence are because of Mr. Skipper's criminal history, particularly his record on supervision, which is not good. . . . The reason the sentence is consecutive to [FECR]300399 is because they are separate offenses and because this crime was committed while he was on parole."

Skipper contends the court ignored the mitigating factors mentioned in his letter. In his view, the court overlooked the fact that he completed studies in domestic violence, cognitive awareness, and parenting. And that he delivered a "sincere and extensive apology."[2]

---

[2] The district court did not comment on the sincerity of Skipper's allocution. But Skipper's word choice left some doubt. He told the court he was "very remorseful *for being incarcerated.*" And he expressed no concern for his victim; rather, he admitted being "in a toxic relationship."

True, sentencing courts must consider mitigating circumstances.  *See State v. Witham*, 583 N.W.2d 677, 679 (Iowa 1998).   But they are not "required to specifically acknowledge each such claim of mitigation urged by a defendant." *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995).  The court told Skipper that he considered Skipper's allocution.  It's just that the court was more persuaded by the State's argument on Skipper's criminal record and probation violations.  The court did not abuse its discretion.

**AFFIRMED.**